This is in re Samsung Top-Load. It is docket 20-6097. And Mr. Frank, when you're ready to proceed, please do so. Thank you, Your Honor. May it please the court. Ted Frank for appellant John Morgan. There are many problems with the settlement of a class action over exploding Samsung washers that paid only 108,000 in total cash and 26,000 coupons to nearly 2.8 million class members. But our appeal focuses on the legal question of the kicker. Plaintiffs shielded their fees from scrutiny by negotiating a segregated fee funds with clear sailing with any reduction in the fee request reverting or kicking back to Samsung. The reason Pearson viewed the kicker with a strong presumption of invalidity and Bluetooth criticized the kicker as a sign of impermissible self-interest is because of the exact scenario in this case. Samsung was willing to pay 6.65 million in fees and cost as a part of the settlement package and to quote Bluetooth at 949, there's quote, no apparent reason that the over $2 million that is returning to Samsung should not instead go to the class. The district court provided no reason, the parties provide no reason, and the only cure for this violation of rule 23 E2C is to reject the settlement as unreasonable or unfair as a matter of law. The court aired as a matter of law in finding no self-dealing at 8273. Under the district court's reasoning, kicker agreements are never self-dealing and the appellees don't identify any alternative test for when a kicker agreement is impermissible. That's reversible legal error in rejecting Bluetooth's and Pearson's reasoning and instead relying on a single judge's dicta from a 1985 case decided before the 2003 amendments added rule 23 H and the 2018 amendments added E2C. Let me just ask you, how do you think this should work? What would be a legal system to do it? Well, the court should say you have this kicker here and the fee agreement is too, you've agreed to an excessive amount of fees. The over $6 million way outstrips the benefits of the class. I'm going to reduce the fees, but if I did that, that would give money to Samsung and that's a problem and the two of you need to agree before me now to remove the kicker from the settlement or I'm going to reject the settlements under E2C. Well, what if the the amount that the class receives is eminently reasonable and in fact compensates them very well for whatever their damages are? Well, over 99% of the class is getting nothing here. So that's not this case. But well, it depends on how you value what they got, right? That's correct. So the district court disagreed with you on the value as did the expert report. Well, the expert report was inadmissible, but we can but even beyond that we know that Samsung was willing to put $7 million of cash on the table to settle the case. Okay. So let me, I'm trying to get your position generally. Sure, which as I understand what you just told Judge Phillips is that kickers are per se unreasonable and a settlement has to be rejected if there's a kicker in it, even if the amount paid to the class is fair. No, well, the amount paid to the class isn't fair here. I'm asking about a general rule. Please answer the question. My general rule is that at a minimum when the kicker returns money to the defendant that the defendant was willing to pay under Bluetooth at page 949. There is no apparent reason that that money should go to the class. And when even if it would be a windfall to the class. Look, maybe a peppercorn would be an adequate amount to compensate the class for its claims. And maybe Samsung is overpaying in the settlement, but that windfall should be fairly split between the class and the attorneys. If the attorneys did such a great job and won this gigantic windfall for their clients, it shouldn't be the case that only the attorneys get the windfall and it's okay to freeze the class out of it. The only alternative, if a kicker isn't a problem here where it's actually costing the class two million dollars that they could have gotten, then and resulting in the attorneys getting many times what the class is getting in cash. I don't understand. I mean, the question is pretty straightforward. Are you saying that kickers are should be prohibited per se? We're saying that kickers, as Pearson says, should have a strong presumption of invalidity, but at a minimum, this case is the worst case scenario. We've never had an appellate case where millions of dollars that could have gone to the class is instead going to the defendant because the plaintiffs negotiated a clause to protect their fees from scrutiny. We could have appealed their freeze. Are you saying then that because it's merely presumed inappropriate that there is a case such as the hypothetical, such as the peppercorn circumstance where it might be okay? I think the case where it might be okay is if every class member is getting everything they could possibly get in the settlement, which is not this case because over 99% of the class is getting, is not getting any cash, is not getting any coupons. Most of the coupons, the coupons expire in May 2021 for purchases made after May 2021. They're mostly going to expire unused. The fees in this case would violate Chambers versus Whirlpool, but the class has no power to contest that and ask for those fees to be redistributed to the class because the kicker has deprived the class of standing to challenge the fees on appeal. I'd like to reserve some time for rebuttal here. Very well. Ms. Sawyer, you're muted. I apologize. Thank you. May it please the court, Kate Sawyer for Amicus Arizona Attorney General's Office. This court should for the first time provide guidance on class action settlements that are structured like the one here in a way that sends any unawarded and uncontested fee request back to the defendant instead of to the class. These types of arrangements embody the ever-present conflict that exists between class counsel and class members, which is precisely the reason for the District Court's Rule 23E2 inquiry. And in these types of arrangements, it's clear that defendants are satisfied and class counsel is satisfied, but it's the class members whose interests are the most harmed when there's this type of arrangement. The danger is that class counsel may have negotiated an unfair fee at the expense of the class's relief. And because of this provision, this type of kicker provision, the class is prohibited from ever reaping the benefits of that negotiation. And let me ask you, are you advocating for a per se rule that any settlement, class action settlement with a kicker, is invalid? I would say that the court could certainly adopt a per se rule, but you could also look to, for example, what the Seventh Circuit has done in finding that these are presumptively strong presumption of invalidity. I think the question would need to be is why can't this money go back to the class, which was not a question that was asked here. If you're looking at it as invalid to begin with, why can't this money be sent back to the class if it was negotiated for by plaintiff's counsel? So we feel like, given the dangers of these types of arrangements, as the Ninth Circuit has recognized that there is no apparent concern in this, the Seventh Circuit has said that they can't think of any other justification for their use. And because of the great potential for abuse, the court should take this opportunity to provide guidance which limits the enforcement of these types of provisions. This settlement here is one example of what could happen when two and a half million dollars was negotiated by class counsel with no chance of the class ever receiving that benefit. And do you take a position on clear sailing provisions? Our brief did not take a position on that. The kicker comes after that, but we did not take a certain position on that in our brief. This case is a different one in that we have this side agreement. Most cases don't, as far as I understand it. Why should we assume that in a typical case, the amount that the defendant would have been willing to pay would be indeed what it agreed to pay to the class and the upper level of the attorney's fees. In other words, there's something built into the play in the joints. As far as the defendant and the attorneys gambling amongst themselves, how much will be paid that isn't necessarily harmful to the class. Recognizing this case is different in that regard. I think that this circuit and many of other circuits have recognized they typically just want to have their lump sum to settle the case, indifferent about the division of how that goes. And so I think that's something that even this court has recognized. And so that the amount it could indicate that if they're willing to do that, it could indicate that the fee request was just too high and the likelihood of reduction. So again, that they would just be willing to put an amount up to settle this to settle the claims. But if I mean it is conceivable that the defendant could determine that they were asking for way too much and there's no chance that the district court's going to approve it. And so they feel comfortable with an amount that's been decided to compensate the class members and go ahead ask for all of these fees, but you're never going to get it. As proved out here, the court took a hard look at the fee request and cut it significantly. I think they take that risk. I think I'd point to the problem with maybe class council having negotiated too high of a fee at that point, maybe cutting from the class's award at that point. Well, the facts here are they negotiated the the amount to be paid in damages to the class before they even discussed attorneys fees, right? That is what the district court said. What I would say to that is that they go into these negotiations. It's not in a vacuum. Surely defendants have an idea of what they're willing to pay to settle the claims when they go into this as well as class council not wanting to negotiate relief that's not going to ever get them a fee award. I see that I've reached my five minutes. If there are no other questions, I would like to turn back to Mr. Frank. Thank you very much. Council, we're ready to hear from you. Thank you. Thank you, your honor. John Elwood for the Samsung defendants and also I'll be arguing for Best Buy Lowe's and Home Depot. This court is being asked to do what no other court has done. Set aside a settlement agreement because of so-called clear sailing and kicker provisions, even though the district judge, chief district judge, DeGiusti, carefully considered those terms as well as each of the rule 23 factors and found the settlement was fair, reasonable and adequate. Under motor fuel, this court will overturn a district court's final approval of a class settlement only if it makes a clear error of judgment exceeds the bounds of permissible choice or when its decision is arbitrary, capricious or whimsical or results in a manifestly unreasonable judgment. Respectfully, Morgan has shown nothing close to justifying reversal under that standard. After providing scrutiny that the district judge rightly called rigorous and even more scrupulous than usual, he correctly concluded that the settlement here provided significant value to the class over and above Samsung's voluntary recall program that had already provided relief to many customers. The settlement here amply satisfied rule 23's requirements of being fair, reasonable and adequate both with respect to benefits and fees. I'll address benefits first. Although Morgan says the class could have been given more, he has not identified any feature of this settlement that leaves the injury without redress. Unlike the cases Morgan cites like Bluetooth which involved insubstantial benefits to class members, the settlement here was intended to and did make class members whole. That was by design. Samsung became a preeminent consumer brand because it takes customer satisfaction seriously. It's a class composed entirely of Samsung customers who we want to keep as Samsung customers and the idea that we're indifferent to giving money to Plans Council versus the class makes no economic sense. We want to keep the customers coming back. We don't want to keep the plaintiff's lawyers coming back. The settlement benefits here fell broadly into two main buckets and they really were substantial. They were designed to make the class whole. Importantly, this was an uncapped settlement and as many people as had valid claims could come forward and seek relief and Samsung would honor them all. So far, there haven't really been very many claims, have there? Well, there have been claims on both the drain pipe and there have been claims on the repairs. In addition to that, I mean... You're nowhere close to if you assume it's going to be about the same throughout. They're nowhere close to what was used to evaluate the amount of the settlement. I disagree. What was used to evaluate the amount of the settlement was the warranty benefit of telling these people for the useful life of your machine, we are going to repair, replace it. We're going to give you $400 in expenses for any expenses you had because of the problem and various other things. And that was the basis of the value. The judge did not consider the repairs or any of the rebates that went into it. And again, we have both the warranties to make sure people are going to have a... They're not going to have a problem because of these two flaws during the useful life of the machine. And that in itself is a very substantial benefit. Even though HLAA, even though Morgan criticizes it, the fact of the matter is people buy millions of dollars of warranties a year for that peace of mind. And we cite cases in our brief, the Volkswagen case, for the proposition that it has independent value, not just for amount of the claims, but knowing that that's not going to be an issue for you. Secondly, in addition to that, which guarantees that they're not going to be out of pocket for these two flaws, there is, even for people who have experienced no problem, they have a variety of rebates, which again, did not even figure in the judge's calculation of the value of the settlement. That was all entirely based on the warranties. Well, and that's fair, isn't it? I mean, in order to take advantage of the rebate, they have to go back to the Samsung who they had very bad experience with and buy another product. That's not true. For example, there's the 15.5% rebate is if they buy a washer from any brand. And again, the initial expert evaluated this as case was only worth 7% of the price of the scene already. They're getting as a floor 15.5% rebate regardless of which brand it is. And on top of that, they also get if they even if they keep the machine, if they're satisfied enough to keep their Samsung machine, they get a separate rebate of 25 to 85 dollars off another Samsung product. There are 26,773 people have requested those rebate forms. Those are sitting when the when you know, this litigation is over. People can call on those rebates as they see fit. Let me let me ask you this. We've got the kicker and the clear sailing provision here. Doesn't that in some ways, the combination of those interfere with the adversarial process that we typically rely upon to see that a fair settlement is reached on behalf of the class action plaintiffs. I think that that is as much of a flaw as it is that basically it reverses the eliminates the adversarial relationship as the district judge said here the objectors objection pretty much made the made those provisions go poof and you start over. In addition to that, there are cases like the the case by Judge O'Malley the Lonardo versus Travelers and Jumping Company where she made the point same with Bluetooth some with the online DVD rental antitrust litigation or the Ninth Circuit. The courts have their own obligation to satisfy themselves of the fairness of this and that's what the judge did here with the last minute of my time. I'd like to turn to the fact that nothing about the failed side negotiated. No, I'm going to start over again in English. Nothing about the failed side negotiations justify setting aside the settlement. It would be a very harmful precedent to hold that an objector can invalidate an otherwise fair and reasonable settlement that they oppose. Anyway, based only on the fact that the objector himself chose not to complete the side agreement. The only real basis for the objectors appeal here is the issue the objector himself created by walking away at minimum. It would penalize defendants like Samsung from doing something court should want to encourage working to voluntarily resolve objections. Samsung would be in a worse position here than if we're just pulled Morgan at the outset that when we weren't interested in trying to resolve his objections and that would appear to give objectors increased ability to sabotage settlements. They objected to anyway. With that, I would like to, you know, cede the rest of my time to co-counsel and I'll say that there's no basis for setting aside Chief Judge to choose these careful findings under motor fuel and we ask the court to defer. Thank you. Thank you, Your Honor. Samuel is at gruff on behalf of the class plaintiffs. I think that the key question takes two forms here. One is Judge Phillips question about what is the proper legal standard and the second is Judge McHugh's question that isn't there something inherently troublesome about clear sailing and kicker arrangements, especially when combined. And I think the answer to the two is the same. If you look at this circuit's law on this point, the answer is that when there is reason for concern about attorneys fees, the way that that is handled is by exacting judicial scrutiny by the district court. That is the safeguard. It's ultimately the district court and every case cited by Mr. Frank from other circuits, the Pearson case, Bluetooth, they all end up there with sometimes harsh language for the parties, but they always end up at the point that the district court didn't do its job in evaluating the settlement carefully enough in this court's recent opinion. I know it's not a published opinion, but nonetheless it summarizes the case law in this in this circuit in Sefcovic at footnote for this court says the burden upon the district court is to carefully scrutinize the arrangement so that it is satisfied that there has been no breach of fiduciary obligations to the district court to the class and that takes the form again following the circuits case law from cases like Tennille and Reuter of a four-part inquiry into the process of negotiations, what the representations of the parties were to the district court, whether the class got a good deal, whether there was risk involved in the further litigation of the case. The district court followed each of these steps and more importantly the district court followed exactly what modern rule 23 in its current form requires. It first wrote an opinion, a long opinion, on the 23 E factors as to fair, reasonable, and adequate, including the way that fees would be calculated and then separately, it said under 23 H that it was awarding fees and here's the language of the rule that's never quite cited by Mr. Frank, which is that is authorized by law or by the party's agreement. The very terms of the rule anticipate that courts may be guided by the party's agreement and yet Ms. Sawyer on behalf of the amici and Mr. Frank are basically trying to write that out and say if there is a party agreement on as to the fees that somehow is illegitimate and calls for derailing the the settlement. In this case, there just are no elements there. We have ample recovery for the class. Mr. Elwood touched on the valuation. The valuation was based only on one component of the case and what's more in the motor fuels case, this court has already rejected Pearson on whether Lodestar fees in a consumer case have to be tried proportionately to the recovery of the class. And so on these points, it's not that this court hasn't spoken. This court has spoken extensively on how to review class actions. Now, this class is about consumers. It's about washing machines. It's not as remunerative as some of the big oil and gas royalty cases that have come before this court. It doesn't have huge damages. It's a bad thing to have your washing machine blow up in your house. There's no question about that. And this settlement says if you were injured, if you were property and we put that aside, but for the basic consumer satisfaction, this is an entirely appropriate settlement. It gives what people most want in their home appliances, which is security. When I was a kid, the most popular TV commercial was the poor lonely Maytag repairman and the entire sales pitch was the need for security in the appliances in the home. That's what Samsung offered. Those things have market value, the warranties, the protections. We have expert evaluation of it. There's very little dispute about the value of the settlement. There's very little dispute that the class got what it did. There's nobody here arguing that the class should have gotten more. There's nobody here arguing that the lodestar was impermissible. This is an entirely odd circumstance for an appeal of a class settlement. I have no questions, which always makes me nervous, Your Honors, but let me just ask if the court would like me to address the side deal because I think that the court finding below that there was no deal before it and that it did not evaluate it in the consideration of the appropriateness of the settlement is dispositive. Well, they challenged the findings on that and one of the facts that are challenged is whether there was opposition to the side agreement by class counsel and the district court found there was no opposition. Reading the brief, I think there certainly was opposition. That seems to me to be clearly erroneous, that finding by the district court. Does that matter here? Well, Your Honor, what the district court found was that we never threatened to sue them. They found two things, found no threat to sue and also found separately that there was no objection to it and so that there was no opposition to it. So yes, I agree with you that under a clearly erroneous standard, there was no threat to sue but there was certainly pretty strong opposition. Initially, there was, Your Honor, before we back down and to be perfectly candid. We were, we did object and we objected because we were class counsel. We had been appointed interim class counsel. Samsung went and negotiated benefits to the class with somebody else when we were class counsel. That's an interference with the attorney-client relationship. We were categorically opposed to that and then we were more opposed when we learned the terms of it because the terms of the agreement was to pay off New Jersey Council, which the district court had already found had conferred no benefit upon the class and to pay off Mr. Frank and to put in a residuary position as the last in line, the class. Had we ever negotiated a settlement in which the first tranche of money came to the lawyers and then only the residual would go to the class members, Mr. Frank would have a field day. He would, if he could, he would be apoplectic and then he would have us make his day because that would be the easiest case he ever had. That's what they came back with and we said, you're not supposed to negotiate that and we were, we did object to it. As to the terms, we never had concrete terms that we could address, Your Honor. I think there's nuance to the district court's opinion. I fear that I don't have it in front of me. If I can just conclude on one point, every single case cited by Mr. Frank turns on either the class getting nothing or the district court not doing its job, including this circuit's Woodruff case. That's just not the case here. Thank you, Your Honor. Unless there's something, I'm sorry, unless there's something more, Your Honor. Any further questions? All right. Thank you, Counselor. Mr. Frank. You're muted. I'm muted? No, Mr. Frank is. All right. I'm jumpy, is what I am. There we are. Thank you, Your Honor. I must take issue with my friend's characterization of the record on multiple counts there. First, we do say that the class should have gotten more. They should have gotten the $2 million that is instead reverted to Samsung. Judge McHugh mentions fairness, but I think she's using that term to describe adequacy. Settlement must be fair, adequate, and reasonable. And whether the amount going to the class is an adequate settlement of the claims is one question, but whether the allocation between the attorneys, the defendant, and the class is fair is a different question. And that's what we're challenging here, the fairness of the kicker reverting $2 million to Samsung that they were willing to pay to settle the claims. And they're willing to pay the class because they cut a side deal that was submitted to the court December 31st, docket 215, that would have provided the class another $1.3 million in cash or an order of magnitude more than what class counsel provided in getting their $4 million fee. Well, you say that was submitted to the court, but as I read the record, the court twice asked for, to get copies of the settlement, the proposed settlement agreement, and the only thing they got was a term sheet that was provided by opposing counsel, was provided by Samsung, not by you. So the court really didn't ever have anything other than a term sheet. Well, the court did have the term sheet and the only thing left was an agreement. The details, yes. But my colleague mischaracterizes the tranches. We got nothing from that side deal unless the class got at least $600,000. The class came first. They claimed that they opposed that side deal because the New Jersey counsel would get $750,000. New Jersey counsel is getting $750,000 and class counsel has done nothing about that. Their assertions are completely contrary to what they've actually done. And with respect to a threat, when we're accused of misconduct by a powerful law firm that then lays out the elements of a tort and then refuses to state that they're not going to sue us, we have to take that as a threat. There's no way we can take that as a threat. And even in their last filings, they were saying that it was, they opposed it as an impermissible selfish deal when the only possible benefit would be to the class as $1.3 million. You mentioned the hard look. 90% of unopposed fee requests are granted and it's a catch-22 to say, it's okay because the objector came in. But if the objector doesn't come in, there isn't the hard look. And if the objector doesn't come in, then the kicker and the clear sailing have their full effect. And they asked for that full effect at docket 142 at pages 14 and 15, where they say, oh, you don't need to look at this at all because Samsung's okay with it and the money won't go to the class anyway. They explicitly self-dealt. They explicitly did it and it cost the class $2 million here. The district court committed legal error because it applied Rule 23 E2C incorrectly. It did not address Bluetooth at all in its analysis. And when it did address Bluetooth later in the fee request after it already approved the settlement, which is too late because the Bluetooth goes to the fairness of the settlement, not to the fee request. It addressed Bluetooth by rejecting Bluetooth and instead adopting a Second Circuit, one judge's dicta from a Second Circuit opinion that contradicts Bluetooth. All right, that's all. I'm not sensing you're out of time. And we appreciate everybody's arguments today. Case is submitted and counsel are excused.